UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61202-CIV-JOHNSON

CHAMBLISS, LTD.,

                Plaintiff,

v.

COMMERCE AND INDUSTRY
INSURANCE COMPANY,

                Defendant.

_____

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court on Plaintiff's Motion for Partial Summary Judgment (DE 53) and Defendant's Motion for Summary Judgment (DE 54). A hearing was held on both Motions on October 2, 2007, and the Motions are now ripe for adjudication. The court having considered the parties' arguments at the hearing as well as the Motions filed herein, denies the Plaintiff's Motion and grants in part and denies in part the Defendant's Motion.

### I. BACKGROUND

Plaintiff's Amended Complaint seeks a declaratory judgment of insurance coverage and alleges breach of contract by Defendant. DE 11. Plaintiff avers that on February 5, 2002, a Broward County Pollution Prevention and Remediation Division inspector alleged the existence of petroleum product in a monitor well at Plaintiff's facility located at 3215 South University Drive, Davie, Florida (site), and that at the inspector's request, Plaintiff

filed a Discharge Reporting Form on the same date. DE 11 at 7, ¶ 10. The next day, Hunter Chambliss spoke on the telephone with Cary Pine, a Broward County representative, indicating that Plaintiff filed the Discharge Reporting Form as a result of a suspicion of contamination, not of a confirmed discharge, and indicated that the actual determination of the occurring of a discharge would depend on future laboratory analysis. DE 11 at 7, ¶ 11. By letter dated February 7, 2002, Plaintiff advised Broward County that its site release detection systems did not indicate a release occurring from its storage tank system. DE 11 at 8, ¶ 12. On August 6, 2002, Broward County ordered Plaintiff to obtain an Environmental Assessment and Remediation licence and to conduct site assessment activities. DE 11 at 8, ¶ 13. Plaintiff requested additional time to comply with the Broward County directive, to which Broward County agreed, subsequently issuing the required license on December 9, 2002. Id.; DE 54, Ex. O. Handex of Florida, Inc. (Handex) performed testing on January 8 and 16, 2003, at Plaintiff's site and issued its report dated February 6, 2003, finding contamination therein. DE 53 at 6, Ex. E.

Defendant issued a Storage Tank Third Party Liability, Correction Action and Cleanup insurance policy to Plaintiff covering the period between November 23, 2001, through November 23, 2002 (Policy I). DE 54 at 3. Plaintiff applied for renewal of Policy I on October 18, 2002, filling out in that regard a questionnaire which indicated that as of the date of the application for renewal it did not "know of any fact or circumstances which may reasonably be expected to result in a claim or claims being asserted against [it] for environmental cleanup or response . . . arising from the release of pollutants into the environment." DE 59 at 3, Ex. E. Defendant renewed Policy I effective November 23, 2002 through November 23, 2003 (Policy II). DE 54 at 3. On January 21, 2003,

Defendant's agent, AIG Technical Services (AIGTS), received Plaintiff's claim dated January 14, 2003, pertaining to the site contamination based on the Handex report. DE 53-2 at 51, 52.

On November 10, 2003, an AIGTS representative requested information concerning the claim, and Plaintiff's counsel responded to the inquiry on November 17, 2003, providing copies of the Handex report and Broward County's August 6, 2002, letter. DE 59, Exs. F & M. Defendant issued a reservation of rights letter on coverage under Policy II on October 26, 2004, and on April 13, 2005, denied coverage for remediation at the contaminated site. DE 54, Exs. S & T; DE 53 at 7.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where no genuine disputed issue of material fact is present, entitling the moving party to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56. The framework for deciding a summary judgment places the initial burden on the moving party to inform the court of the basis for its motion, identifying portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that the party believes show the absence of a genuine disputed issue of material fact. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting Celotex, 477 U.S. at 323). An issue of fact is genuine only when a reasonable fact finder could make a finding for the non moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

If the moving party fails to discharge its initial burden, then the court must deny the motion for summary judgment without the need to address the type of showing made by the non movant. Fitzpatrick, 2 F.3d at 1116 (quoting Clark v. Coats & Clark, Inc., 929 F.2d

604, 608 (11th Cir. 1991)). In the event that the movant carries its initial burden, then the burden shifts to the non movant to show the existence of a genuine issue as to any material fact. Fitzpatrick, 2 F.3d at 1116. The opponent, however, "must do more than simply show that there is some metaphysical doubt" as to any material fact. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Further, responsibility to make a showing varies depending on whether the legal issues pertaining to the facts are to be proven by the movant or by the non movant at trial. Fitzpatrick, 2 F.3d at 1115. The Eleventh Circuit interprets Celotex to mean that if the party moving for summary judgment has the burden of proof at trial, that party must make an affirmative showing of the absence of a genuine issue of material fact by supporting the summary judgment motion with uncontroverted, credible evidence that would entitle the party to a directed verdict.[1] Fitzpatrick, 2 F.3d at 1115; U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991). In other words, the moving party needs to show that for all the essential elements of its case for which it carries the burden of proof at trial, there would not be a reasonable fact finder that could find for the non moving party. Id. If the moving party makes such a showing, summary judgment should be entered on its behalf unless the non moving party responds with "significant, probative evidence demonstrating the existence of a triable issue of fact." Fitzpatrick, 2 F.3d at 1115 (quoting Four Parcels, 941 F.2d at 1438). Also, in assessing whether or not the moving party has satisfied its burden, the court must view the evidence and all factual inferences arising therefrom in the light most favorable to the non moving party. Isenbergh v. Knight-Ridder

---

[1] The standard for summary judgment mirrors that required for a directed verdict under Fed.R.Civ.P. 50(a). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Newspaper Sales, Inc., 97 F.3d 436, 439 (11th Cir. 1996). A non movant, however, cannot rest on "mere allegations," and must "'set forth ' . . . 'specific facts'" in opposing a summary judgment. Purcell v. Toombs Co., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), quoting Fed.R.Civ.P. 56(e)).

Moreover, if it is the non movant who bears the burden of proof at trial, the moving party has two options. One is simply to show the court the absence of evidence supporting the non moving party's position without the need to negate the opponent's claim. Fitzpatrick, 2 F.3d at 1115-16 (quoting Four Parcels, 2 F.2d at 1437-38). In the alternative, the moving party may come forward with affirmative evidence showing that the non moving party would be unable to prove its case at trial. Fitzpatrick, 2 F.3d at 1116 (quoting Four Parcels, 941 F.2d at 1437-38).

Yet, even where the parties agree on the basic facts, but disagree on the inferences to be drawn from those facts, summary judgment may still be inappropriate. United States v. Twenty (20) Cashier's Checks, 897 F.2d 1567, 1569 (11th Cir. 1990). The drawing of inferences from a non moving party's "specific facts" is permitted only if the inferences "are reasonable in view of other undisputed background or contextual facts and only if such inferences are permissible under the governing substantive law." Mize v. Jefferson City. of Educ., 93 F.3d 739, 743 (11th Cir. 1996). If reasonable minds could differ as to inferences arising from undisputed facts, then summary judgment should be denied. Twenty Cashier's Checks, 897 F.2d at 1569. If the record taken as a whole could not lead a rational trier of fact to find for the non movant, there does not exist a "genuine issue for trial." Matushita, 475 U.S. at 587 (quoting First Nat'l Bk. of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)).

## III. DISCUSSION AND FINDINGS OF FACT

### A.  Plaintiff's Motion for Partial Summary Judgment.

By its Motion Plaintiff seeks "partial summary judgment on its declaratory judgment and breach of contract claims determining that, subject to any deductibles and coverage limits and any exclusions that [Defendant] is able to establish, [Plaintiff] is entitled to coverage under Coverage B for its claim." Plntff's Mtn. For Summ. Judgmnt., p.9.  Plaintiff also requests summary judgment on Defendant's now withdrawn or abandoned affirmative defenses.[2] Defendant, for its part, seeks final summary judgment against Plaintiff on all of its claims on the grounds: Plaintiff's claim under Coverage B of Policy II is barred by Exclusion A of that Policy, Def's Mtn. for Summ. Jdgmnt., pp.6-11; Plaintiff is not entitled to a defense under Coverage D of Policy II, Def's Mtn. for Summ. Jdgmnt., pp.12-13; and, there is no coverage for Plaintiff's claim under Policy I because the "claim" was not reported during the Policy's effective dates, Def's Mtn. for Summ. Jdgmnt., pp.14-16. In its Response in Opposition to Defendant's Motion, Plaintiff asks the Court to "enter summary judgment *sua sponte* for [Plaintiff] without formal cross motion on the issues raised in [Defendant's] Motion. Plntff's Resp. In Opp. To Def's Mtn. for Summ. Jdgmnt., p. 16.

Plaintiff takes the position that applicability of Coverage B under Policy II hinges on its knowledge of a confirmed release resulting from a pollution condition from an

---

[2] The affirmative defenses in question are numbered 2-4, 6, 8-11, 25, 27 and 32 as set forth in Defendants' Answer (DE 23). DE 53 at 1, 9. Defendant's Amended Answer does not contain the affirmative defenses in question. DE 55. In its Response in Opposition to the Motion, Defendant indicates that it does not dispute the withdrawal of the subject defenses. DE 59 at 2. Consequently, the court finds the issue to be moot and, accordingly, denies Plaintiff's Motion for Partial Summary Judgment in this regard.

6

underground storage tank system at the time of applying for that coverage.[3] DE 53 at 4-8. Plaintiff interprets pollution condition to mean "a discharge from one or more of the covered tank systems." DE 53 at 5, ¶ 2. Plaintiff goes on to aver that only an investigation and confirmation of a release can elevate a pollution condition to a confirmed release.[4] DE 53 at 5, ¶ 2.

One of the exhibits to Plaintiff's Motion is an affidavit from Hunter Chambliss wherein the affiant states that "[t]he discharge of petroleum product at the facility was not expected or intended by Chambliss, Inc." DE 53-2, Ex. A at 2. At the hearing on October 2, 2007, Plaintiff maintained its position that Exclusion A under Policy II (which would prevent Coverage B from applying) requires knowledge of a discharge from an underground tank in order for the insured to be aware of the existence of a pollution condition. Plaintiff also argued that a visible sheen does not amount to a contamination under existing regulations. Further, Plaintiff contended that the internal release detection system at its site did not indicate the presence of pollution, adding that there was no proof of any release from the storage tanks in February of 2002. Moreover, Plaintiff postulated at the hearing that the application for renewal of Policy I did not ask about the existence of a pollution condition, adding that because the application to obtain Policy II was filled out during the effective period of Policy I, the definitions in Policy I applied, and that a pollution

---

[3] The parties agree that Policy II's retroactive coverage date for Plaintiff's site is November 1, 1997. DE 53 at 6, ¶ 2 & Ex. B; DE 54 at 15, ¶ 2 & Ex. B-1.

[4] According to Plaintiff's interpretation, a pollution condition may be confirmed by using "a system test, site check, or another approved means." DE 53 at 5, ¶ 2.

condition was not known to Plaintiff at the time of applying for Policy II.[5] Additionally, Plaintiff argued at the hearing that Policy II cannot be rescinded retroactively, and that under the provisions of Fla. Stat. § 627.426(2)(a) Defendant waived the right to deny coverage because of not notifying Plaintiff within the statutorily required period of the reservation of rights to assert a coverage defense.[6] This argument by Plaintiff first appeared in his Response to Defendant's own Motion for Summary Judgment in connection with its allegation that Defendant failed to raise Exclusion A in a timely fashion. DE 57 at 5-6. Defendant asserts that procedurally Plaintiff is barred from raising a new claim in a responsive pleading. DE 67 at 2. Defendant is correct but this court will nonetheless consider the issue herein.

Defendant, further opposes Plaintiff's argument as to Defendant's waiver of the right to assert Exclusion A because Fla. Stat. § 627.426 "only covers failure to give timely notice of disclaimer of 'coverage defenses.'"[7] DE 67 at 3. Defendant goes on to point out that the Florida Supreme Court "has specifically held that a 'coverage defense' *does not include a specific exclusion in the policy*." Id. (emphasis in original) (citing AIU Ins. Co. v. Block Marina Inv., Inc., 544 So. 2d 998, 1000 (Fla. 1989) & United States Fidelity & Guar.

---

[5] On inquiry from the court, Plaintiff indicated that if no policy had been in effect at the time of applying for Policy II, it would have looked to the colloquial meaning of a claim in responding to the application questionnaire.

[6] Fla. Stat. § 627.426(2)(a) states in part that "[a] liability insurer shall not be permitted to deny coverage based unless: (a) [w]ithin 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the . . . insured . . . ."

[7] By way of passing, the court notes that Defendant argues the Florida Statute has no applicability to him whatsoever as a choice of law matter for the reason that the insurance policies at issue provide for the applicability of New York law. Because of our finding herein the court need not resolve the issue.

Co. v. Am. Fire & Indem. Co., 511 So.2d 624, 625 (Fla. 5th DCA 1989) for the proposition that "to the extent that Exclusion (A) applies, there is simply no coverage for Chambliss' claim and its waiver argument pursuant to Section 627.426 is without merit.").

Defendant raises other claims in opposition to Plaintiff's motion such as the failure of Plaintiff to offer sufficient proof of compliance with all the requirements for Coverage B. This court declines the invitation to jump into the pool of swirling terms to determine whether or not all of the requirements for Coverage B of Policy II have been met for the reason that Plaintiff has elected not to reply to many of the arguments advanced by Defendant in its Response. For instance, Defendant asserts that Plaintiff has offered no proof of essential elements for Coverage B. Specifically, Defendant avers that Plaintiff has offered no proof that the costs for which it seeks coverage are "reasonable and necessary costs" and that the "Pollution Condition" was unexpected (D.E. 59, p. 8). Assuming Pthat such are essential elements it is clear that reasonableness is generally a question of fact for determination at trial and thus preclusive of summary judgment.

Moreover, were we to conclude as Plaintiff requests that it has established a *prima facie* claim for Coverage B of Policy II, the fact remains that Exclusion A remains viable. The law is clear and this court finds that the failure of Defendant to reserve rights under F.S. 627.426 does not include disclaimer of liability based upon complete lack of coverage for the loss sustained. AIU Insurance Company v. Block Marine Investments, Inc., 544 So 2d 998 (Fla. 1989); Prime Insurance Syndicate Inc. v Soil Tech Distributors, Inc., 2006 WL 1823562 (M.D. Fla. 2006) ( failure to fulfill the requirements set forth in F.S. 627.426 does not bar the insurance company from disclaiming liability where coverage sought was expressly excluded under the policy).

9

Exclusion A states: "[T]his insurance does not apply to claims: arising from Pollution Conditions existing prior to the inception of the Policy and not disclosed in the application for the Policy, if the Insured knew or reasonably could have expected that such Pollution Condition could give rise to a Claim, Corrective Action or Cleanup." Policies 1 and 1, attached as exhibits B and C respectively to Defendant's Motion for Summary Judgment (D.E. 54). This Court declines to issue summary judgment on the issue of knowledge.

### B. Defendant's Motion for Summary Judgment

Defendant avers that the damages sought by Plaintiff are not covered under either Policy I or Policy II, and on this basis moves for summary judgment in its favor and against Plaintiff. DE 54 at 19-20, 24-37. As for Policy II, the arguments raised by the parties are the same arguments raised in connection with Plaintiff's Motion for Summary Judgment, and for the reasons stated previously at pages 6-10 *supra,* the Court finds genuine issues of material fact in dispute incident to the issue of knowledge which preclude summary judgment on this claim. The same can not be said, however, for Plaintiff's claim under Policy I. As for Plaintiff's Policy I claim, the Court finds no genuine issues of material fact in dispute, and that Defendant is entitled to summary judgment on this claim as a matter of law.

Defendant moves for summary judgment on Plaintiff's claim for coverage under Policy I based on Plaintiff's failure to report its claim during the effective date of the Policy. Policy I is a claims-made policy of insurance which, under Coverage B, provides coverage for "corrective action due to underground storage tank releases." Coverage B of Policy I provides as follows:

**COVERAGE    B--CORRECTIVE    ACTION    DUE    TO**

> **UNDERGROUND STORAGE TANK RELEASES**
>
> Subject to the applicable limits of liability and the deductible, the Company agrees to pay on behalf of the insured reasonable and necessary costs that the insured is legally obligated to pay for Corrective Action due to Confirmed Releases resulting from Pollution Conditions from an Underground Storage Tank System which are unexpected and unintended from the standpoint of the Insured. The Pollution Conditions must commence on or after the Retroactive Date shown in Item 7 of the Declarations. *Claims reporting a Confirmed Release must first be reported to the Company in writing, during the Policy Period or during the extended Reporting Period, if applicable.*

Policy I, attached as Exhibit "B" to Defendant's Motion for Summary Judgment (DE 54)(emphasis added).

The Policy Period for Policy I runs from November 23, 2001, to November 23, 2002. Id. Defendant received notice of Plaintiff's claim on January 21, 2003, by Plaintiff's letter dated January 14, 2003, advising of the claim against it by the County and attaching the February 5, 2002, Handex Report detailing the site contamination. Plaintiff contends this Notice, although provided 2 months after expiration of the Policy Period, was filed within the federally mandated six-month extended reporting period as set forth in 40 C.F.R. 280.97 (b)(2)(2)(e) (the "Federal Extended Reporting Period") and was therefore timely. This Court disagrees.

In 1976 Congress enacted the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§6901-6992, "to promote the protection of health and the environment...." 42 U.S.C. §6902(a). The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." <u>Meghrig v. KFC Western, Inc.</u>, 516 U.S. 479, 483 (1996)(citation omitted). As part of the RCRA, Congress provided

for federal regulation of underground storage tanks. See 42 U.S.C. §§6991-6991i. The Environmental Protection Agency ("EPA") subsequently promulgated release detection, prevention and corrective action regulations for underground storage tanks, and those regulations are enforceable by the EPA Administrator. Id. at §6991b; 40 C.F.R. 280, et seq. One such regulation promulgated by the EPA, 40 C.F.R. §280.97, sets forth the manner in which an underground storage tank insurance policy may be cancelled or non-renewed. 40 C.F.R. §280.97 requires that the following language be included in all underground storage tank policies such as the one at issue herein:

> The insurance covers claims otherwise covered by the policy that are reported to the ["Insurer" or "Group"] within six months of the effective date of *cancellation or non-renewal* of the policy *except where the new or renewed policy has the same retroactive date or a retroactive date earlier than that of the prior policy, and which arise out of any covered occurrence that commenced after the policy retroactive date, if applicable, and prior to such policy renewal or termination date.* Claims reported during such extended reporting period are subject to the terms, conditions, limits, including limits of liability, and exclusions of the policy.

40 C.F.R. 280.97(b)(2)(2)(e) (emphasis added). This language was included in each of the policies at issue herein, Policy I and Policy II, attached as Exhibits "B" and "C," respectively, to Defendant's Motion for Summary Judgment (D.E. #54).

Plaintiff attempts to utilize the above regulation to extend the reporting period applicable to its claim. Unfortunately for Plaintiff, the federal extended reporting period does not apply in this case. As a preliminary matter the Regulation on its face applies only to those instances where the policy of insurance was "cancelled" or "non-renewed." In this case Policy I, which provided coverage from November 23, 2001 to November 23, 2002, was renewed, thus generating Policy II, which provided coverage from November 23, 2002

to November 23, 2003. Id.

Moreover, the extended reporting period upon which Plaintiff relies expressly states that it does not apply *"where the new or renewed policy has the same retroactive date or a retroactive date earlier than that of the prior policy, and which arise out of any covered occurrence that commenced after the policy retroactive date, if applicable, and prior to such policy renewal or termination date."* Id. In the instant case, both prongs of the above-stated two-part test are undisputed. Both Policy I and renewed Policy II contain the same retroactive date of November 23, 1994.[8] Furthermore, the record is unrefuted that the following incidents---- a February 5, 2002, discovery of free floating product in a monitoring well at the site, a February 5, 2002 Compliance Report and Discharge Reporting Forms, an August 6, 2002 Broward County letter ordering assessment and remediation activities at the site, and finally Plaintiff's October 4, 2002, request for an Assessment and Remediation License----all occurred after Policy I's retroactive date of November 23, 1994, and prior to the November 23, 2002, policy renewal/termination date. As such, the federal extended reporting period does not apply to Policy I as a matter of law.

In a last-ditch effort to resuscitate Policy I, Plaintiff, relying on the 9th Circuit case of Zurich v. Whittier, 356 F.3d 1132 (9th Cir. 2004), argues that application of Policy II's Exclusion in effect serves to "cancel" or otherwise "rescind" the Policy, thus creating a "gap in coverage" the EPA, through its regulations, has sought to avoid. In Zurich, after denying indemnification based on an alleged material misrepresentation in the policy application

---

[8] At page 15 of its Motion for Summary Judgment, Defendant inadvertently misstates the retroactive date of the subject policies as being November 23, 1997 for Policy I, and November 23, 1994 for Policy II. A review of the subject policies, however, reveal the retroactive date of the policies to be the same, November 23, 1994. Of course, the exception would kick in under either scenario.

regarding prior contamination of an underground storage tank site, the insurer sued the insured, a gas station, seeking, among other relief, rescission of the policy. The district court granted Zurich's motion for summary judgment, allowing rescission of the policy on the grounds of Whittier's misrepresentation pursuant to a state statute. The district court held that rescission was permissible under state law because the EPA's UST regulations limited only prospective cancellation, not rescission. On appeal, the Ninth Circuit reversed, holding that even though the EPA's UST regulations placing limits on the cancellation of UST policies specifically refer only to policies "terminated" or "cancelled" by the insurer, the EPA's subsequent clarification of its position in its amicus curiae brief that "the definition of 'termination' or 'cancellation' found in 40 C.F.R. §280.92 encompasses rescission," precluded Zurich from rescinding the policy.

The facts in Zurich are distinguishable from those in operation in this case. In Zurich the insurer sought rescission. A rescission extinguishes an insurance policy *ab initio,* "as though it never existed," and those claiming to be insureds in law, never were insureds under the policy of insurance. See 17 Fla. Prac., Insurance Law §20:4 (2007 ed). On the other hand, the application of a policy exclusion, as in this case, does not "cancel" or otherwise render void the insurance policy. It simply bars coverage for that particular claim at issue. Thus, even were the Court to apply Exclusion A to the claim at issue in this case, Policy II will still remain valid and enforceable with respect to any claims that complied with the terms and conditions of the Policy. Under this scenario, there can be no "gap in coverage" as Plaintiff claims.

In short, the Court declines Plaintiff's invitation to extend Zurich beyond its limited holding as it relates to rescission. In so ruling, the Court observes that no court subsequent

14

to Zurich has so much as applied Zurich to similar rescission-type facts, let alone stretched Zurich in the way Plaintiff requests to bar an insurer from raising valid policy exclusions.[9] Finding that Plaintiff is not entitled to take advantage of the federal extended reporting period, Plaintiff can only be found to have coverage under Policy I if it can prove that it provided written notice of a "claim" between November 23, 2001 and November 23, 2002 --- the effective dates of the Policy. Here, it is not, nor can it reasonably be, disputed that Plaintiff submitted a notice of claim/notice of loss form to Defendant's agent in January 2003, some two months after the expiration date of the Policy. Accordingly, as there is no genuine issue of material fact in this regard, Defendant is entitled to judgment as a matter of law on Plaintiff's claim for coverage under Policy I.

In accordance with the above and foregoing, it is hereby

**ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment (DE 53) is **DENIED**.

2. Defendant's Motion for Summary Judgment (DE 54) is **GRANTED in part and in part DENIED in part**. Specifically, Defendant's motion as it relates to coverage under policy 1 is granted and as it relates to coverage under policy 2 is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this ____ day of October, 2007.

_____
LINNEA R. JOHNSON

---

[9] Plaintiff also makes the argument, with no supporting authority, that "even if" it "did not disclose a 'pollution condition' the non-disclosure is not material. According to Plaintiff, "if [Plaintiff] had provided [Defendant]

15

UNITED STATES MAGISTRATE JUDGE

Copies to: All Counsel of Record